# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0718 | **DATE** | August 2, 2001 |
| **CASE TITLE** | | *Kourtney Harms vs. Laboratory Corporation of America* | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ■ Pretrial conference set for 8/28/01 at 2:00 p.m.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [11-1] is denied. Plaintiff's motion for summary judgment on liability [20-1] is denied. Further, defendant's motions *in limine* [13-1], [15-1], and [16-1] are denied. Defendant's motions *in limine* [14-1] and [17-1] are granted. Plaintiff's motions *in limine*, which were filed in conjunction with the Final Pretrial Order, are granted in part and denied in part. No motions for reconsideration will be entertained. At the August 28, 2001 Pretrial Conference, the parties with authority to settle are to be present.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| ✓ | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

**AUG 0 3 2001**
date docketed

docketing deputy initials

date mailed notice

**Document Number**

**39**

CW
courtroom deputy's initials

EO-7
FILED FOR DOCKETING
01 AUG -2 PH 5: 15

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

AUG 0 3 2001

KOURTNEY HARMS,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        Case No: 00 C 0718
                                   )
LABORATORY CORPORATION             )        Judge James H. Alesia
OF AMERICA, a/k/a LABCORP,         )
a/k/a NATIONAL HEALTH              )
LABORATORIES, INC. - CHICAGO       )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Before the court are (1) plaintiff Kourtney Harms's ("Harms") motions *in limine*; (2)

defendant Laboratory Corporation of America's ("Labcorp") motions *in limine*; (3) Harms's

motion for summary judgment on liability; and (4) Labcorp's motion for summary judgment.

The court addresses each motion below.

## I. BACKGROUND[1]

Labcorp, a Delaware corporation with its principal place of business in Delaware, is a

medical laboratory that performs blood tests on specimens collected from patients at physician

or clinical offices. Harms is a citizen of the state of Illinois. In 1997, blood specimens were

collected from Harms at Primary Care Family Center in Libertyville, Illinois and sent to Labcorp

for testing. At the time of the 1997 blood draw, Harms was pregnant and due to deliver in

---

[1]Unless otherwise indicated, the following facts are taken from the parties' Local Rule
56.1 statements.

October 1997. After testing the specimens, Labcorp reported to Dr. Daniel Lynch ("Lynch") – Harms's primary treating physician during her pregnancy – that Harms's blood group was "O" and that her blood type was Rh positive. However, the reported results for Harms were inaccurate. In fact, Harms is group "O" but is Rh negative.

Prior to 1997, Lynch had treated Harms on various occasions, beginning in August 1990. In 1992, Harms required back surgery and was given a blood test in conjunction with that surgery. At that time, in 1992, Harms requested to know her blood type; the 1992 test showed that Harms was Rh negative. At the time of her appointments in 1997, there was a chart in Harms's file which contained the results of this 1992 blood test. Further, subsequent tests done on Harms's blood following her 1997 pregnancy showed that she was Rh negative.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in two parts. Part A discusses the effect of Rh sensitization. Part B discusses the events giving rise to this action.

## A.    Rh Sensitization[2]

If a pregnant woman is Rh negative, physicians generally administer a drug called Rhogram during the woman's pregnancy. This is because if the fetus is Rh positive, the woman may become sensitized to the fetus's Rh positive blood. Rhogram prevents this sensitization from occurring. If a woman becomes sensitized to the Rh factor, then she develops antibodies.

---

[2]"The Rh, or Rhesus, factor in blood is present in about 85 percent of the population, who are accordingly classified as having Rh positive blood. The other 15 percent of the population, without the Rh factor, are classified as Rh negative." *Price v. Neyland*, 320 F.2d 674, 675 (D.C. Cir. 1963).

Those antibodies can fight against a fetus that is Rh positive. During her pregnancy in 1997, Harms was not administered Rhogram. During Harms's appointments in 1997, Lynch reviewed only the results from Harms's 1997 blood test (and not the results of the 1992 blood test that were in Harms's file). After reviewing the 1997 results, Lynch concluded that Harms was Rh positive and, therefore, she did not need Rhogram. Following the stillbirth of her child in 1997, it was determined that Harms became sensitized to Rh positive blood. Harms claims that this sensitization is the direct result of her being pregnant with a Rh positive fetus and not being given Rhogram. In its own motion for summary judgment, Labcorp concedes this point. (Def.'s Statement of Undisputed Facts, ¶ 10.) However, in responding to Harms's motion for summary judgment, Labcorp disputes this point and argues that the record shows that Harms could have become sensitized during her own birth. (*See* Def.'s Statement of Add. Facts, ¶¶ 26-27.)

As a result of this sensitization, Harms may form Rh antibodies if she is exposed to Rh positive blood in the future which would then fight that Rh positive blood. Generally, a person's body produces antibodies to fight foreign bodies in her system. Currently, Harms has a low level of Rh antibodies in her system. Harms's level of antibodies may remain low, but if she is exposed to Rh positive blood, the level of antibodies could increase. Apart from developing Rh antibodies, Harms has not suffered any physical pain or suffering as a result of her sensitization, nor has she required medical care because of the sensitization. However, if she becomes pregnant, the sensitization could pose a risk of physical harm. (Def.'s Statement of Undisputed Facts, ¶ 12.) Because of her Rh sensitization, Harms could have complications during pregnancy; in fact, the record shows that there is a 60 percent chance that Harms will have some

3

complications during any future pregnancy due to her Rh sensitization. (*See, e.g.,* Pl.'s Mot. for Summ. Judg., Ex. G.) Further, the fetus could develop a condition called "erythroblastosis fetalis" or "hemolytic disease of the newborn" which can cause fetal harm or death. Harms has testified that she is concerned about complications in future pregnancies and possible injury to a future fetus. However, there are many factors which could affect whether any future fetus is at risk because of Harms's sensitization, including the blood type of the father.

To date, Harms has not sought any medical or psychological treatment because of her Rh sensitization. Also, Harms is currently single and not involved in any serious relationship. In addition to her Rh sensitization, Harms also has a sensitivity to Kell antigens in her blood, a result of a blood transfusion years ago.

## B.    **Events Giving Rise to this Controversy**

In February of 1997, Harms sought the treatment of Dr. Lynch at the Primary Care Family Center in Libertyville, Illinois (the "Center"). On February 21, 1997, blood specimens were collected from Harms at the Center and sent to Labcorp for testing. Specifically, Rosada Heintz ("Heintz") and Arlene Cedro ("Cedro") were the Labcorp employees involved in the testing of Harms's blood. Heintz – the technician who conducted the testing at issue – testified that she has more than forty-years experience, that at the time of testing she was aware of Labcorp's policies and standards of care, that she followed those standards in conducting the test on the specimen labeled "Harms," and that she did not become aware of the discrepancy until the current action was filed. (Def.'s Statement of Add. Facts, ¶¶ 4-10.)

At the time in question, Labcorp routinely conducted various testing on specimens for the Center. At certain times, Labcorp personnel would be on-site at the Center to draw blood from the patients. However, it was not uncommon for nurses or technicians from the Center to do a draw on a patient. Once the blood specimens were sent to Labcorp, Labcorp had exclusive control over the equipment and personnel involved in the testing. Harms claims that the blood specimen sent to Labcorp with the label Harms was, in fact, her blood. Labcorp disputes this; the record shows that Dr. Goodnough, Labcorp's expert witness, stated that it is more probable than not that the sample was Harms's blood. (Pl.'s Mot. for Summ. Judg., Ex. H at 64:15-24.)

The results for the testing done on the sample labeled "Harms" in 1997 found that the blood type was Rh positive. This result was reported to Lynch at the Center. In reliance on this 1997 test, Lynch did not administer Rhogram to Harms during her pregnancy. It is undisputed that, at the time Lynch received the 1997 results, Lynch had the results to the 1992 blood test in Harms's file. Lynch did not consult the 1992 results. If he had, then Lynch would have noticed a discrepancy in the results.

Pursuant to its own procedures, Labcorp conducts Rh testing on each specimen. Any error in blood typing has serious complications, and the standard of care for commercial laboratories strives for 100 percent accuracy. An error in blood typing is a rare occurrence and does not normally happen in the absence of negligence. When Labcorp learned of the inaccurate results for Harms's test, the Operations Manager of Labcorp's Elmhurst Facility (where the test is question was performed), Randy Chapman ("Chapman"), conducted an investigation. However, at the time of the investigation, the samples and the testing materials had already been

disposed of pursuant to Labcorp's standard procedures. There was no written report filed. Although Harms claims that Labcorp's procedures required that such a written report be compiled, Labcorp claims that such a report was not required in the investigation at issue.

In the present action, Harms has brought a two-count complaint for negligence and *res ipsa loquitur*. Harms claims that Labcorp was negligent in conducting the tests on her blood, and, as a result, she has suffered injury caused by Labcorp's negligence. This court has subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332.[3]

## II. DISCUSSION

This matter is currently before the court on Harms's motion for summary judgment on liability and Labcorp's motion for summary judgment. In addition, both parties have filed various motions *in limine*. The court will address each motion in turn.

### A. Labcorp's Motions *in Limine*

As a threshold matter, the court will dispose of Labcorp's motions *in limine*. Labcorp brings five motions *in limine*, seeking to exclude certain evidence.

#### 1. Motion *in limine* #1

In its first motion *in limine*, Labcorp seeks to exclude evidence of any future risks to Harms that are not reasonably medically certain to occur. Specifically, Labcorp argues that there is no evidence that any future fetus conceived by Harms will be harmed or affected by the

---

[3]Harms originally brought this action in Illinois state court. However, Labcorp removed the case to this court pursuant to 28 U.S.C. § 1446, asserting that this court has subject matter jurisdiction as the parties are citizens of diverse states and the amount in controversy exceeds $75,000. Both parties agree that Illinois substantive law governs this action.

antibody carried by Harms. Harms responds that a risk exists that a future fetus will be affected in some way, and that risk is determined by expert medical testimony to be about 60 percent. The court agrees with Harms. Because Harms now carries the antibody, the risk to future pregnancies exists with medical certainty. In fact, the existence of this risk is a medical certainty to which both Labcorp's and Harms's experts have testified. The fact that there may be no physical harm to the fetus (if, as Labcorp suggests, Harms were to marry a person with her blood type) does not mean that the *risk* itself does not exist. Further, there is evidence that shows that there is a sixty percent chance that Harms and her fetus will have some complication due to the antibody in Harms's blood; that means that it is more likely than not there will be an actual problem – a fact that is reasonably medically certain. Thus, Harms is free to offer evidence regarding future risks. Accordingly, Labcorp's motion *in limine* #1 is denied.

**2.  Motion *in limine* #2**

In its second motion *in limine*, Labcorp seeks to bar evidence that it failed to satisfy the applicable standards of care by failing to compare the results of Harms's February 1997 Rh test results with the results of her November 1992 Rh test. Harms has not responded to this motion *in limine*, and therefore it is uncontested. Accordingly, the court grants Labcorp's motion *in limine* #2.

**3.  Motion *in limine* #3**

In its third motion *in limine*, Labcorp seeks to bar evidence of any emotional injuries allegedly sustained by plaintiff. Specifically, Labcorp contends that the evidence does not support Harms's claim of emotional injury because (1) Harms did not receive any treatment for

her emotional injuries; (2) there is no expert testimony that Harms is suffering any emotional injury; (3) there is no evidence that there has been any manifestation of any emotional or mental anguish allegedly suffered by Harms. Further, Labcorp argues that, because there is no expert testimony, any lay testimony regarding Harms's alleged emotional injuries would be highly prejudicial. Harms responds that, because she knows of the risk to any future pregnancies, this knowledge has caused significant mental anguish.

Although there is no expert testimony or evidence pertaining to Harms's emotional injuries, the court finds that Harms herself is capable of testifying to her own emotional state, providing she reasonably and sufficiently explains the circumstances of the injury. *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000). This testimony, taken with other evidence of the physical effects suffered by plaintiff, may be enough to establish emotional injury. *See id.* (holding that "an injured person's testimony may, by itself or in conjunction with the circumstances of a given case, be sufficient to establish emotional distress without more.") Until trial, the court cannot determine whether Harms will be able to satisfy her burden of proving emotional distress.[4] Thus, the court cannot exclude any testimony or evidence regarding emotional distress or injury at this time. Accordingly, the court denies Labcorp's motion *in limine* #3. However, Labcorp is not precluded from raising appropriate objections.

---

[4]Labcorp also claims that any evidence of emotional injury should be excluded because there is no evidence that Harms suffered any physical manifestation of emotional distress. However, Illinois courts have held that a direct victim of negligence need not allege physical symptoms of emotional distress. *See Doe v. Surgicare of Joliet, Inc.*, 643 N.E.2d 1200, 1203 (Ill. App. Ct. 1994) (citing *Corgan v. Muehling*, 574 N.E.2d 602, 609 (Ill. 1991)). In this case, Harms is a direct victim.

### 4.    Motion *in limine* #4

In its fourth motion *in limine*, Labcorp seeks to bar evidence regarding the adequacy of its post-occurrence investigation. Specifically, Labcorp contends that any such evidence regarding the actions taken by Labcorp after the inaccurate results of Harms's test were sent is akin to a subsequent remedial measure and, therefore, is inadmissible under Federal Rule of Evidence 407. Further, Labcorp argues such evidence is irrelevant to the issue in this case – as the issue is the injury caused by an inaccurate test result, not what occurred after that result were obtained. Harms responds that Labcorp was required to do this investigation and that it is entitled to the information obtained during that investigation.

The court finds that evidence about an investigation, and what that investigation revealed, is relevant to the case at hand. Accordingly, Labcorp's motion *in limine* #4 is denied. However, any changes made or remedial measures taken by Labcorp following this investigation are inadmissible under Federal Rule of Evidence 407.

### 5.    Motion *in limine* #5

In its fifth motion *in limine*, Labcorp seeks to bar references to unsupported medical theories of causation regarding Harms's stillbirth. Harms has not responded to this motion *in limine*, and therefore it is uncontested. Accordingly, the court grants Labcorp's motion *in limine* #5.

### B.    Harms's Motions *in Limine*

Also as a threshold matter, the court will dispose of Harms's motions *in limine*. Harms brings five motions *in limine*, seeking to exclude certain evidence.

### 1. Harms's motion *in limine* #1

In her first motion *in limine*, Harms seeks to preclude twelve topics – labeled paragraphs A through L – from the record. Labcorp agrees to paragraphs B, C, D, E, F, G, H, K, and L. Accordingly, the motion is granted as to those paragraphs. Labcorp opposes paragraphs A, I, and J.

Paragraph A seeks to preclude any evidence, testimony or reference to the doctrine of "unavoidable accident" because, Harms contends, any evidence of negligence negates the unavoidable accident doctrine. Labcorp argues that there is no specific evidence of negligence and that it is entitled to an instruction on "unavoidable accident." Until trial, the court cannot determine whether plaintiff will be able to establish evidence of negligence. Thus, the court cannot say at this time that Labcorp will not be entitled to an instruction on "unavoidable accident." Accordingly, the court denies Harms's motion *in limine* #1 as to paragraph A. However, Harms is not precluded from raising appropriate objections at the time of trial.

Paragraph I seeks to preclude any evidence, testimony or reference to mitigation of damages. According to Harms, the basis for excluding such evidence is that this is an affirmative defense which must be pleaded. Labcorp claims that it did plead this affirmative defense. Further, Labcorp claims that because Harms is seeking emotional distress damages, Harms had a duty to mitigate such damages, and it is entitled to prove that she did not do so. The court finds that, in paragraph 4 of Labcorp's Separate or Affirmative Defenses as found in its Answer to Harms's First Amended Complaint, Labcorp pleaded the affirmative defense of mitigation of

damages. Thus, Harms's basis for precluding such evidence is inapplicable. Accordingly, the court denies Harms's motion *in limine* #1 as to paragraph I.

Paragraph J seeks to preclude any evidence, testimony or reference to contributory negligence because this is an affirmative defense which, Harms claims, Labcorp did not plead. The court finds that, in paragraph 4 of Labcorp's Separate or Affirmative Defenses as found in its Answer to Harms's First Amended Complaint, Labcorp pleaded the affirmative defense of contributory negligence. Thus, Harms's basis for precluding such evidence is inapplicable. Accordingly, the court denies Harms's motion *in limine* #1 as to paragraph J.[5] In sum, the court denies Harms's motion *in limine* #1 in its entirety.

## 2.   Harms's motion *in limine* #2

In her second motion *in limine*, Harms seeks to exclude any evidence or reference relating to the issue of contributory negligence. Specifically, Harms contends that such evidence would be improper and prejudicial because there is no evidence of negligence on the part of Harms. In response, Labcorp argues that whether Harms is contributorily negligent – to the extent that she knew her blood type prior to the November 1997 test – is a question of fact for the jury. Labcorp contends that the following evidence in the record could allow for such an inference: (1) Harms learned about blood types in high school; (2) Harms had back surgery in 1992 at which time she requested the results of her blood test; (3) following that test in 1992, Harms

---

[5]Paragraph J of Harms's motion *in limine* #1 and Harms's second motion *in limine* seek to exclude the same evidence for different reasons. It is unclear to this court why Harms included paragraph J, given the fact that Harms would have known that the only basis she offered for exclusion is clearly invalid if she had read Labcorp's Answer and Separate or Affirmative Defenses.

admitted that she was told that her blood type was "O" and, consequently, that she knew her blood to be type "O"; and (4) an employee of the Care Center stated that its policy is to give the type and Rh factor when a patient requests the results of a blood test. Further, Labcorp contends that Harms would have been told her complete test results in 1997 if she would have requested those results, and then she would have known that the 1997 results contradicted the 1992 results. Therefore, according to Labcorp, the evidence creates a factual dispute regarding Harms's failure to exercise reasonable care. The court disagrees.

First, Labcorp does not cite to any evidence in the record which shows that Harms did, in fact, request her blood test results in 1997. The record only supports the assertion that, if she would have asked, then she would have been told those results; the deposition of a nurse from the Center, Lavris, cited by Labcorp, does not state that Lavris knew Harms had requested her results, Lavris simply opines that first-time mothers usually want to know everything. (Lavris Dep. at 56:18-20.) The court finds this lack of evidence even more dubious given the fact that there is written documentation of Harms's request for the 1992 results, so there probably would have been documentation if she would have requested the 1997 results. Thus, the court finds there is no evidence that Harms knew of the conflicting results, and, therefore, there is no factual dispute. Any evidence or reference to Harms's alleged contributory negligence would be highly prejudicial with little – if any – probative value. *See* FED. R. EVID. 403. Accordingly, the court grants Harms's motion *in limine* #2.

### 3. Harms's motion *in limine* #3

In her third motion *in limine*, Harms seeks to bar certain opinions not disclosed by Dr. Tamura. Labcorp stipulates that Dr. Tamura – Labcorp's expert witness – will not offer opinions on the topics at issue in this motion. Accordingly, the court grants Harms's motion *in limine* #3.

### 4. Harms's motion *in limine* #4

In her fourth motion *in limine*, Harms seeks to bar Dr. Goodnough -- Labcorp's expert witness -- from testifying to certain opinions that she claims were not disclosed. First, Harms seeks to bar Dr. Goodnough from offering any opinion on the standard of care for commercial laboratories. Labcorp stipulates the Dr. Goodnough will not offer any such opinion. Accordingly, the court grants the motion as to that issue. Second, Harms seeks to bar Dr. Goodnough from offering any opinion on how one can obtain a false positive result without breaching any standards of care. During his deposition, Dr. Goodnough was asked about this issue, and he stated that he did not know how such a result can occur – not that he had no opinion on the issue, as Harms claims in this motion. Thus, the court finds that such an opinion was disclosed by Dr. Goodnough; Harms is free to cross-examine the witness on this issue. Accordingly, the court denies the motion with respect to that issue. Third, Harms seeks to bar Dr. Goodnough from offering any opinion that Dr. Lynch fell below the acceptable standards of care. This issue – as well as Dr. Goodnough's opinion on that issue – was included in Dr. Goodnough's expert report. Thus, the court finds that this opinion was disclosed to Harms. Accordingly, the court denies Harms's motion with respect to this issue.

In sum, the court grants in part and denies in part Harms's fourth motion *in limine*. Dr. Goodnough is precluded from offering any opinion on the standard of care for a commercial laboratory. The remaining issues in Harms's fourth motion *in limine* are admissible.

## 5.    **Harms's motion *in limine* #5**

In her fifth motion *in limine*, Harms seeks to bar Chapman. Labcorp's Operations Manager, from testifying to the issue of standards of care. Specifically, Harms argues that Chapman did not complete an expert report and, therefore, should be barred from offering any opinions on the standard of care exercised by Labcorp. In response, Labcorp argues that Chapman – as the Operations Manager of Labcorp's Elmhurst facility – is not required to produce an expert report because he was not specially retained nor is he an employee who regularly offers expert testimony. Further, Labcorp contends that Chapman will be testifying to opinions regarding matters within the scope of his normal employment duties.[6]

The court agrees that not all expert witnesses must file an expert report. *See Cicero v. Paul Revere Life Ins. Co.*, No. 98 C 6467, 2000 WL 656666, at *1 (N.D. Ill. Mar. 23, 2000) (finding that Rule 26(a)(2) does not require all experts to submit reports). In fact, the advisory committee note to Federal Rule of Civil Procedure 26(a)(2) clearly states that only certain persons need to produce expert reports, and that some expert witnesses can testify without a report (i.e., a treating physician). FED. R. CIV. P. 26(a)(2) advisory committee's note. The court

---

[6]The court notes that in its entire ten-page response, Labcorp never specified whether it will seek to elicit expert or lay opinions from Chapman, only that he should be allowed to give his opinion. However, in its witness list contained in the Final Pretrial Order, Labcorp states that Chapman will offer expert opinions.

finds that Chapman was not the type of expert witness who was required to provide a report. However, although no report was required for Chapman, Labcorp still may not have properly disclosed Chapman.

Under Federal Rule of Civil Procedure 26, "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." FED. R. CIV. P. 26(a)(2)(A)(1). Thus, under the Rules, Labcorp must disclose all its expert witnesses to Harms. In this case, Harms sent interrogatories #18 and #19 to Labcorp asking for, respectively (1) the identities of all witnesses who Labcorp will call to testify at trial and (2) the identities of all witnesses who Labcorp will offer opinion testimony. (Def.'s Resp. to Pl.'s Mot. *in limine*, Ex. C.) In its response to interrogatory #18, Labcorp stated Chapman would testify to certain "opinions." Yet Labcorp clearly stated that those witnesses specially retained as experts would offer "expert" opinions. (*Id.*)[7] It was not until the filing of the Final Pretrial Order that Labcorp stated that Chapman would be offering expert opinions (although in its response to the current motion, Labcorp does not specify whether Chapman's opinions are expert or lay). Although Chapman was disclosed as a witness, based upon the record before it, the court finds that Labcorp did not specifically disclose Chapman as a witness who would offer expert testimony as required under Rule 26(a)(2). However, this does not end the court's inquiry.

The Seventh Circuit has found that "an expert need not be identified if he was 'a viewer or actor with regard to the disputed question.'" *Patel v. Gayes*, 984 F.2d 214, 217 (7th Cir.

---

[7]In response to interrogatory #19, Labcorp referred to its response to interrogatory #18.

15

1993) (citations omitted). "In order to determine if an expert need be identified before trial, Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony." *Id.* Under Rule 26(a)(2), an expert must be identified if his testimony does not come from his personal knowledge of the facts underlying the case. *Id.* (citing *Jenkins*, 785 F.2d at 728).

In this motion *in limine*, Harms seeks to bar Chapman from offering opinions on the issue of standard of care. Thus, the court must decide whether Chapman acquired his opinions about the correct standard of care directly through his involvement in the testing of Harms's blood or during his investigation of that testing. *See id.* at 218 (examining whether treating physicians acquired their opinions "about the correct duty of care directly through their treatment of [plaintiff].") In *Patel*, the Seventh Circuit found that treating physicians' testimony with respect to the standard of care was the type of testimony given by experts.[8] *Id.* Further, testimony with respect to general standards of care is "classic" expert testimony. *Id.* The court agrees with the holding in *Patel* and finds that opinions on the standard of care is expert testimony. *See also Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (holding that a treating physician who sought to testify on the issues of ultimate cause of the plaintiff's injury was purporting to speak as an expert on that issue based upon "some unspecified body of professional knowledge" and not based solely upon his treatment of the plaintiff).

In this case, testimony on the general standards of care in the industry would come from Chapman's professional knowledge, not from his observations of Labcorp's testing procedures

---

[8]The *Patel* case, discussing the admissibility of testimony by a treating physician, is particularly compelling given that Labcorp has likened Chapman's status to that of a treating physician.

as related to the current case. This is classic expert testimony. Thus, in order to have Chapman opine on general industry standards of care, Labcorp had to specifically identify Chapman as an expert witness who would testify under Rules 702, 703 or 705 of the Federal Rules of Evidence. The court finds that Labcorp did not sufficiently disclose to Harms that Chapman would be testifying to expert opinions. Thus, Chapman is precluded from offering expert opinions on the industry or general standards of care. Accordingly, the court grants Harms's motion *in limine* #5 to the extent that it seeks to preclude expert testimony from Chapman on general standards of care.

Because the inquiry focuses on the substance of the testimony rather than the status of the witness, Chapman is still permitted to testify as a lay witness. Further, the court notes that, under Federal Rule of Evidence 701, a lay person may offer opinion testimony providing he testifies to that which he perceived firsthand. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995). Further, "Rule 701 requires that a lay opinion have a reasonable basis grounded either in *experience or specialized knowledge* for arriving at the opinion that he or she expresses." *Id.* In this case, Harms does not challenge the qualifications of Chapman, and the court finds that – given his years of experience working at Labcorp's facilities – he does have that sort of experience or specialized knowledge which would allow him to offer lay opinions under Rule 701. *See Wactor v. Spartan Trans. Corp.*, 27 F.3d 347, 350 (8th Cir. 1994) (allowing defendant's employees to offer lay opinion testimony, based on their experience in the industry, regarding the condition of the broken lockline and the events each participated in and witnessed preceding the plaintiff's alleged injury); *Middleby Corp. v. Hussman Corp.*, No. 90 C 2744,

1993 WL 151290, at *10 (N.D. Ill. May 7,1993) (allowing a witness to testify to the events he observed contemporaneously and the opinion he formed about those events, as well as the impropriety of account entries, but excluding his previously undisclosed opinion on the effect of those entries as "classic" expert testimony). Thus, Chapman may be able to offer opinion testimony on what he witnessed firsthand, such as the standards of care utilized by Labcorp in conducting testing on Harms's sample and other samples. Accordingly, the court denies Harms's motion to the extent that it seeks to preclude any lay opinion testimony from Chapman on his firsthand knowledge of Labcorp's standards. Harms may make appropriate objections at the time of trial.

## C.   **Local Rule 56.1**

Before addressing the merits of the summary judgment motions, the court must address the requirements under Local Rule 56.1. Local Rule 56.1, formerly Local General Rule 12, sets forth guidelines for litigants moving for and opposing summary judgment. Under the local rule, the party moving for summary judgment must file, among other things, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOC. R. 56.1(a)(3). The required statement must consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.*

Further, a party opposing a motion for summary judgment must file a response to the movant's statement of facts, including specific answers for each numbered paragraph in the

movant's statement. LOC. R. 56.1(b)(3)(A). Specifically, Local Rule 56.1(b) requires that the opposing party file, among other things:

> [A] concise response to the movant's statement that shall contain: (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

LOC. R. 56.1(b)(3). Any facts that are not *specifically* denied will be deemed admitted in considering the motion for summary judgment. *Id*; *see also Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527-28 (7th Cir. 2000). Moreover, when a non-moving party fails to comply with Local Rule 56.1(b), all facts set forth in the moving party's statement will be deemed admitted. *Michas v. Health Cost Controls of Illinois, Inc.* 209 F.3d 687, 689 (7th Cir. 2000). The Seventh Circuit has "consistently and repeatedly upheld a district court's strict compliance with its local rules governing summary judgment." *Bordelon*, 233 F.3d at 527.

In this case, in support of its motion for summary judgment, Labcorp filed a proper Rule 56.1(a) statement. Labcorp has offered specific cites to the record in support of the seventy-six paragraphs contained in its Statement of Facts. However, in opposing the motion for summary judgment, Harms has failed to file a response under Local Rule 56.1(b). Thus, all of the facts contained in Labcorp's Statement of Undisputed Facts are deemed admitted – to the extent that they are supported by the record – as they are uncontested. *Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997); *see also Stewart v. McGinnis*, 5 F.3d 1031, 1033-34 (7th Cir. 1993) (holding that facts alleged in a Rule 56.1(a) statement are deemed admitted if they are

supported by the record). However, in fairness to Harms, when deciding Labcorp's motion for summary judgment, the court will consider those portions of the record cited by Labcorp in their entirety to determine whether a question of fact exists. Further, the court will not consider those assertions in Labcorp's Statement of Undisputed Facts that are not supported by record.

## D.    Standard for Deciding a Motion for Summary Judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material facts exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). However, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *James v Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998) (citing *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994)).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256-57; *Celotex*, 477 U.S. at 324; *Schroeder v. Luftansa German Airlines*, 875 F.2d 613, 620 (7th

Cir. 1989). When deciding cross-motions for summary judgment, the standard is the same as that for individual motions for summary judgment, and the court must consider each motion independent of the other. *See LDI Corp. v. Investor Group Leasing Ltd.*, No. 95 C 5244, 1997 WL 733891, at *3 (N.D. Ill. Nov. 17, 1997). Each party must establish that no issues of material fact exist, and therefore it is entitled to judgment as a matter of law. *Id.*

## E.    Harms's Motion for Summary Judgment on Liability

In her motion for summary judgment, Harms asks this court to find that she is entitled to judgment as a matter of law on the issue of Labcorp's liability. Specifically, Harms contends she has established *res ipsa loquitur*, and there is no genuine issue of material fact with respect to that issue. Also, Harms claims that there is no question of fact with respect to her negligence claim. Further, Harms also claims that Labcorp's affirmative defenses fail as a matter of law.

### 1.    *Res ipsa loquitur*

In this case, Harms seeks to rely on the doctrine of *res ipsa loquitur*, which is a rule of evidence. When the doctrine is applicable, it permits an inference of negligence from otherwise inexplicable facts and circumstances by allowing proof of general negligence through circumstantial evidence. *Imig v. Beck*, 503 N.E.2d 324, 328 (Ill. 1986). In order to invoke the doctrine, Harms must demonstrate that (1) her injury resulting from an inaccurate test result is one that ordinarily would not happen in the absences of negligence and (2) Labcorp had exclusive control of the instrumentality that caused the injury. *Id.*; *see also Darrough v. Glendale Heights Cmty. Hosp.*, 600 N.E.2d 1248, 1252 (Ill. App. Ct. 1992) (finding that, in a negligence claim, a plaintiff can establish proximate cause by establishing that the defendant had

exclusive control of the instrumentality that caused plaintiff's injury and the unlikelihood of that injury absent negligence). *Res ipsa loquitur* does not require absolute and conclusive proof of its foundation. *Darrough*, 600 N.E.2d at 1252. However, a plaintiff "must present evidence reasonably showing that elements exist to allow an inference that the occurrence is one which ordinarily does not happen without negligence." *Karkuszewski v. Horbowski*, No. 88 C 6443, 1990 WL 114621, at *2 (N.D. Ill. July 23, 1990).

Whether the doctrine of *res ipsa loquitur* applies to a specific case is a question of law which the court must decide in the first instance based on whether the plaintiff has presented sufficient facts that could establish that the defendant had exclusive control over the instrumentality and that the injury is otherwise unexplainable absent defendant's negligence. *Imig*, 503 N.E.2d at 329; *Darrough*, 600 N.E.2d at 1252. Once that decision is made, however, "it becomes the function of the trier of fact to weigh the strength of the inference of general negligence." *Imig*, 503 N.E.2d at 329. Specifically, the Illinois Supreme Court has held that "[t]he weight or strength of such inference will necessarily depend on the particular facts and circumstances of each case and is normally a question of fact to be determined by the jury." *Imig*, 503 N.E.2d at 329. This is because *res ipsa loquitur*, when properly established, raises a *permissive* – not a mandatory – inference that plaintiff's injury arose from defendant's negligence. *Carter v. Johnson*, 617 N.E.2d 260, 268 (Ill. App. Ct. 1993). *See also Karkuszewski*, 1990 WL 114621, at *3 ("Because the doctrine gives rise to a permissive inference, as opposed to a rebuttable presumption, however, defendant need not submit any evidence at all."); *Darrough*, 600 N.E.2d at 1253 ("That the acts and conduct of a defendant

22

were reasonable does not destroy the inference of negligence, but will allow a jury to reject such an inference after weighing all the evidence.")  Courts are very reluctant to grant summary judgment for a plaintiff under the doctrine of *res ipsa loquitur*.  *Indiana Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, No. 80 C 1857, 1991 WL 206079, at *4-5 (N.D. Ill. Sept. 27, 1991) (citations omitted).

In this case, Harms claims that she has established the elements of *res ipsa loquitur*. Specifically, Harms contends that type of testing done on Harms's blood normally produces accurate results.  In support of this contention, Harms cites to the expert testimony of Dr. Polesky.  In fact, Labcorp agrees that such errors as the one that occurred in the present case rarely happen.  Further, Harms argues that Labcorp – in testing Harms's blood -- had exclusive control over the testing, equipment, and results.  It is undisputed that Labcorp had exclusive control over the testing itself, although Labcorp disputes that it had exclusive control over Harms's blood prior to testing.  "Exclusive control" is not a rigid standard, but a flexible one in which the key question is whether the probable cause of Harms's injury was one which Labcorp was under a duty to Harms to anticipate or guard against.  *Darrough*, 600 N.E.2d at 1252.  In the present case, the inaccurate blood test resulted in Harms not being administered Rhogram, which expert testimony states caused Harms to develop the antibody.  Here, Harms has produced facts, supported by the record, that Labcorp had a duty to guard against inaccurate testing.  In fact, Harms's expert will testify that, under industry standard, 100 percent accuracy is required in blood testing. The court, therefore, finds that Harms has sufficiently presented facts which could

give rise to the inference that Labcorp – by nature of its alleged exclusive control over the blood test – was negligent. Thus, *res ipsa loquitur* applies to this case as a matter of law.

However, the application of *res ipsa loquitur* simply means that the facts provide circumstantial evidence of negligence. This evidence must be weighed, not necessarily accepted, in light of all the facts and circumstances of the particular case. "When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." *Indiana Harbor Belt*, 1991 WL 206079, at *5 (internal quotations omitted). In essence then, this case involves a question for the trier of fact as to whether an inference of negligence should be drawn from the circumstances of the case. *Imig*, 503 N.E.2d at 329 (holding that, because *res ipsa loquitur* gives rise only to a permissive inference, a directed verdict for plaintiff is inappropriate "even where the defendant presents no explanation or rebuttal, because it must be left to the jury whether to draw the inference of negligence from circumstances of the occurrence"). Thus, because questions of fact exist, summary judgment is inappropriate. Accordingly, the court denies Harms's motion for summary judgment on liability.

### 2. Negligence claim

Harms also argues that she is entitled to judgment as a matter of law on the issue of liability because she has established all elements of her medical negligence claim, and that Harms has failed to provide any rebuttal evidence.

In order to state a medical negligence claim, Harms must establish (1) the applicable standard of care; (2) Labcorp's deviation from the appropriate standard of care; and (3) that Labcorp's deviation from that standard of care proximately caused her injuries. *Sunderman v.*

24

*Agarwal*, No. 2-00-0583, 2001 WL 690512, at *2 (Ill. App. Ct. June 18, 2001). In order to

satisfy this burden, Harms must present expert testimony that establishes each element. *See v.*

*Ingalls Mem'l Hosp.*, 724 N.E.2d 115, 122 (Ill. App. Ct. 1999). In her summary judgment

motion, Harms contends that she has satisfied her burden. Specifically, Harms claims that her

expert, Dr. Polesky, will testify to the following: (1) the standard of care for commercial

laboratories and blood testing centers; (2) in rendering an inaccurate test result, Labcorp deviated

from this standard of care; and (3) Harms's Rh sensitivity was proximately caused by this

inaccurate test result. It is undisputed that, had her test results shown that Harms was Rh

negative, then she would have been administered Rhogram, and that the test results inaccurately

showed that Harms was Rh positive, and Rhogram was not administered.

In response to Harms's motion for summary judgment, Labcorp claims that the

testimonies of Chapman and Heintz,[9] along with the expert testimony of Dr. Goodnough, create

a genuine issue of material fact. In support, Labcorp cites to Chapman's affidavit in which

Chapman testifies to the policies and procedures used by Labcorp during testing. Further, Heintz

is the person who conducted the testing on Harms's blood. In her affidavit, she states that she

---

[9]In her reply brief, Harms asks that the affidavits of Chapman and Heintz be stricken because, Harms contends, these affidavits contain expert testimony not previously disclosed. The court disagrees with Harms's characterization of the testimony contained in the affidavits and will consider them in ruling on Harms's motion for summary judgment. First, the court has already discussed the applicable limitations on Chapman's testimony. (*See supra* Sect. II.B.5.) (However, the court notes, Harms's expert offers evidence on that standard.) Further, in her affidavit, Heintz offers evidence based on her own knowledge of procedures, as well as on her experience and knowledge gained during her forty years in the industry. Nothing in her affidavit amounts to expert testimony; she is permitted to offer her lay testimony, including her opinions. Harms can make appropriate objections at trial.

is aware of Labcorp's policies, procedures, and standard of care and that she followed those requirements in testing Harms's blood. Thus, Labcorp contends, there is a question of fact as to whether Labcorp breached the standard of care. Further, Labcorp offers the testimony of its expert, Dr. Goodnough, who opines that Harms could have become sensitive to the Rh factor (or developed the antibodies) through her mother, and not during her own pregnancy. Thus, Labcorp also contends that a question of material fact exists as to proximate cause.

"[Q]uestions of negligence, due care and proximate cause are ordinarily questions of fact for the jury to decide and become questions of law only when the facts are undisputed or there can be no difference in the inference a jury could draw from the facts." *Wojcik v. City of Chicago*, 702 N.E.2d 303, 309 (Ill. App. Ct. 1998); *see also Sunderman*, 2001 WL 690512, at *2 (holding that proximate cause is usually a question of fact and becomes a question of law only when one conclusion is clearly evident). In this case, there is no direct evidence that Labcorp breached its standard of care. The only evidence is Dr. Polesky's opinion that such a result would not occur without a breach. On the other hand, Labcorp offers evidence (in the form of testimony) that it followed the standards of care in this particular case. Further, Labcorp provides evidence that, in some cases, Labcorp did not perform the blood draw. This could allow the inference that the care facility took Harms's blood then mislabeled it. Thus, there are facts in dispute. A reasonable juror could draw different inferences given the evidence in this case. Summary judgment on the issue of liability, therefore, is inappropriate. Accordingly, the court denies Harms's motion for summary judgment on liability.

### 3.    Labcorp's affirmative defenses

Harms argues that Labcorp's affirmative defenses are inapplicable. First, Harms contends that Labcorp cannot satisfy the sole proximate cause defense because Labcorp has failed to present any expert testimony on this issue. Generally, a defendant seeking to raise the sole proximate cause defense seeks to defeat a plaintiff's claim of negligence by establishing proximate cause solely in the act of another not a party to the suit, aptly referred to as the "empty chair" defense. *McDonnell v. Partlin*, 736 N.E.2d 1074, 1082 (Ill. 2000). However, in the context of a medical negligence case, "the sole proximate cause instruction requires only that the defendant present some evidence that the nondefendant is the sole proximate cause of the plaintiff's injury." *Id.* Given the issues of material fact, the court cannot say that Labcorp will not be able to present evidence entitling it to an instruction on sole proximate cause. Thus, Harms is not entitled to judgment as a matter of law on this issue.

Second, Harms claims that Labcorp cannot rely on industry standards because her claim is based upon vicarious liability and, therefore, only the employees' abilities and skills are relevant. Harms contends that, because Labcorp has offered no expert testimony regarding the standards of its employees, it cannot rely on the defense that it complied with industry standards; Harms offers no legal support for her contention that Labcorp can rely only on expert testimony. However, Labcorp does offer evidence that its employees were following standards of care and Labcorp's policies in conducting testing. Further, the burden is on Harms to establish the requisite standard of care and that Labcorp breached that standard. Given the issues of material fact, Labcorp is entitled to argue at trial that it did not breach the standard of care.

In sum, there are genuine issues of material fact that preclude judgment as a matter of law on the issue of liability. Accordingly, the court denies plaintiff Harms's motion for summary judgment on liability.

## F.    Labcorp's Motion for Summary Judgment

In its motion for summary judgment, Labcorp argues that it is Harms who bears the burden of showing that she has suffered an injury because of Labcorp's negligence. Labcorp claims that plaintiff has failed to meet her burden because her claim is based on risk to future fetuses or children, not on any injury to herself. Labcorp moves for judgment as a matter of law for three reasons: (1) Harms cannot recover damages for risk to her future children; (2) Harms's claim is speculative and premature; and (3) Harms's emotional distress claim should be dismissed because Harms suffered no physical injury or manifestation from any emotional harm.

First, Harms suffers from Rh sensitization. Whether this condition causes her actual physical pain and suffering, Harms has been permanently altered by this sensitization. As a direct result of this sensitization, the experts in this case agree that Harms has a 60 percent chance of suffering from complications with any future pregnancy. Thus, the court disagrees with Labcorp's characterization that Harms has not suffered a present physical injury. Further, Labcorp relies on the fact that it is undisputed that Harms's concern is solely for her future fetuses. Although Harms failed to respond to this statement in Labcorp's Statement of Undisputed Facts – thus deeming it admitted -- the court need only accept those factual allegations that are supported by the record. *See Stewart v. McGinnis*, 5 F.3d 1031, 1033-34 (7th Cir. 1993) (holding that facts alleged in a Rule 56.1(a) statement are deemed admitted if they are

supported by the record). The court recognizes that, in her deposition, Harms testified that she was concerned for the welfare of any future fetus she may have. But, the record also shows that Harms is concerned about future *pregnancies* and any complications that may arise from those pregnancies. (*See* Harms's Dep., Def.'s Mot. for Summ. J., Ex. B at 76:1-8, 86:3-4, 94:5-9.) Any concerns about a pregnancy or complications that arise during that pregnancy clearly affect the woman who carries the fetus. While injuries to a fetus – or emotional injuries suffered by Harms as a result of those injuries to a fetus – may not be recoverable at this time, the court finds that Harms may still be entitled to recovery on injury – either physical or emotional – to herself.[10]

Second, Labcorp asks for judgment as a matter of law on Harms's emotional distress claim. Labcorp claims that Harms is a bystander, and as such, under Illinois law, she must show evidence of a physical injury or manifestation of her emotional injuries. The court disagrees with Labcorp's description of Harms as a bystander. A bystander is a person who is "within an accident's zone of danger" and is sufficiently close to that accident such that she was "subjected to a high risk of physical impact emanating from the accident itself." *Buckley v. Jones Truck Lines, Inc.*, 778 F. Supp. 449, 451 (N.D. Ill. 1991) (quoting *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991)). In this case, the accident that occurred is that an inaccurate result was reported for Harms's blood test and, consequently, Harms was not administered needed medication. As a result, Harms is now Rh sensitive. Thus, she was directly impacted by this

---

[10]The court notes that, in her response brief, Harms does not argue that she is entitled to damages based on injuries to a fetus, but that the injuries – both physical and emotional – are suffered by Harms herself.

accident. Accordingly, the court finds that Harms is not a "bystander" under the zone of danger standard.

Although Labcorp claims that she is claiming emotional damages based on injuries to another person, the court finds that Harms herself has been impacted by the inaccurate results of her blood test. She testified during her deposition that she is worried about any future fetus, as well as future pregnancies. (Harms's Dep., Def.'s Mot. for Summ. J., Ex. B at 76:1-8, 86:3-4; 94:5-9.) Clearly a woman is directly impacted by her own pregnancy -- and by any complications that arise during that pregnancy. Thus, she may also have emotional distress based upon direct injury or impact to herself. As a direct victim, Harms is not required to show evidence of physical manifestations in order to seek emotional distress damages. *Corgan*, 574 N.E.2d at 605-06 (holding that the "zone-of-physical-danger" rule is inapplicable to direct victims). Although there is no evidence that Harms has developed any physical symptoms from her emotional distress or that she has sought any treatment, Harms herself has testified to the emotional strain she has been under since her miscarriage. The lack of corroborating evidence pointed to by Labcorp may be a weakness in Harms's case, but the court cannot say as a matter of law that Harms has not experienced serious emotional distress. Like the Illinois Supreme Court, this court will place its faith "in the ability of jurors to fairly determine what is, and is not, emotional distress." *Corgan*, 574 N.E.2d at 609. *See also Buckley*, 778 F. Supp. at 452 (holding that, although there was little evidence of plaintiffs' emotional distress, the existence and extent of plaintiffs' emotional injuries was a question for the jury).

Third, Labcorp argues that Harms's claims for future risks must be dismissed as clearly speculative. Specifically, Labcorp contends that a number of factors are undetermined – such as the blood type of any future partner of Harms and whether Harms will become pregnant again – and, therefore, future risks cannot be determined. In response, plaintiff argues that her expert, Dr. Polesky, has given specific, statistical evaluations of the likelihood of risks to which Harms is exposed. In many of these instances, Labcorp's own experts have concurred in the statistical probability, or at least have agreed to the risk's existence albeit at a lesser statistical probability.

Under Illinois law, a plaintiff can recover damages for future serious injury if that injury is reasonably certain to occur. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 2000) (citing *Morrissy v. Eli Lilly & Co.*, 394 N.E.2d 1369, 1376 (Ill. App. Ct. 1979)). "Damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover monetary compensation." *Id.* (citations omitted). Although the exact extent to which "certainty" is required, it is generally construed as meaning it is more likely than not that the plaintiff would develop the serious injury in the future. *See id.* However, at least one Illinois Appellate Court has found that a plaintiff could seek damages for risk of future injury – even if that risk is less than fifty percent – as long as the plaintiff can show to a reasonable degree of certainty that the defendant's wrongdoing proximately caused that risk. *See Anderson v. Golden*, 664 N.E.2d 1137, 1138-39 (Ill. App. Ct. 1996). In this case, Dr. Polesky has stated – and Labcorp's experts have agreed – that there is a 60 percent chance that any future fetus conceived by Harms will be Rh positive. Further, Polesky has given myriad statistical probabilities for each risk involved

as those risks increase in severity. Thus, there is evidence of a risk of future harm that has been established with reasonable medical certainty. The court finds, therefore, that the risk of future injury is reasonably medically certain to occur; the factors cited by Labcorp as making such a determination speculative only affect the statistical probability of a certain risk occurring. Although certain risks are less likely to occur, the court cannot say as a matter of law that Harms cannot establish risk of future injury resulting from complications during pregnancy. Further, Polesky has testified that Harms herself faces these increased risks given that she would be the one to receive blood transfusions if needed and to deal with any physical injuries resulting from pregnancy complications. *See Henderson*, 196 F.3d at 851-52 (holding that a plaintiff must establish that he himself was at risk). To withstand summary judgment in the present case, Harms must show "competent and reliable expert medical testimony that there [is] a reasonable medical certainty that [she herself] faces some defined level of increased risk of developing a serious medical condition ...." *Id.* at 852. Harms has satisfied her burden and, thus, her claims survives summary judgment.[11]

However, the court notes that damages for risk of future injury can relate only to those injuries for which Harms herself is at risk – not for risk of future injury to any future fetus which

---

[11]In her response brief, Harms argues that a question of fact also arises under the "lost chance" doctrine. The "lost chance" doctrine enters into the proximate cause analysis in medical malpractice cases where a plaintiff alleges that a defendant's negligence increased the plaintiff's risk of harm. *See Aguilera v. Mount Sinai Hosp. Med. Ctr.*, 691 N.E.2d 1, 4-5 (Ill. App. Ct. 1998). The court has already determined that questions of fact exist; at trial, Harms may be able to present evidence which would allow the jury to consider the "lost chance" doctrine. However, this is not a separate theory of recovery, and Harms is not entitled to damages under this theory alone. *Id.* (citing *Holton v. Mem'l Hosp.*, 679 N.E.2d 1202 (Ill. 1997)).

Harms may conceive. Harms is not permitted to seek any damages for risk of future harm to a fetus because it is impossible to determine without speculation what sort of injury – if any – the fetus would suffer. *See Senderak v. Mitchell*, 668 N.E.2d 1041, 1045 (Ill. App. Ct. 1996) (holding that, under Illinois law, a parent cannot seeks damages based on alleged loss of future unborn children as such an award is too speculative). Further, this could allow for double recovery because if a future child born to Harms suffers any injury, that child could bring an action for his or her own injuries, and Harms could seek damages for her any loss related to that injured child at that time. *See id.*

In sum, the court cannot say as a matter of law that a reasonable juror could not find that Harms was injured by Labcorp's alleged negligence, and that she did not suffer emotional damages as a result of this injury. Thus, summary judgment is inappropriate. Accordingly, the court denies Labcorp's motion for summary judgment. However, the court finds that Harms is not permitted to seek damages for any physical injury that may happen to a fetus she carries, nor may Harms seek emotional distress damages based upon any future risk to a fetus. The permissible damages which the jury may chose to award Harms are limited to any physical impact or injury suffered to Harms as a result of her Rh sensitization, and to her emotional distress regarding her concerns for future complications with any future pregnancy.

## III. CONCLUSION

For the foregoing reasons, the court (1) denies Harms's motion for summary judgment on liability and (2) denies Labcorp's motion for summary judgment. Further, Labcorp's motions *in limine* #2 and #5 are granted; Labcorp's motions *in limine* #1, #3, and #4 and denied. Finally,

Harms's motions *in limine* #2 and #3 are granted; Harms's motion *in limine* #1 is denied; and

Harms's motions *in limine* #4 and #5 are granted in part and denied in part.

Date: **AUG 0 2 2001**

James H. Alesia
United States District Judge